[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 18, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-13537

_____

D.C. Docket No. 06-80059-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LOUIS WAYNE RATFIELD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(Augsut 18, 2009)

Before EDMONDSON, BLACK and SILER,[*] Circuit Judges.

PER CURIAM:

_____

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

Louis Wayne Ratfield appeals his conviction for preparing and filing false tax returns, specifically, (1) aiding and assisting in the preparation of false federal tax returns for trusts and estates (IRS Form 1041), in violation of 26 U.S.C. § 7206(2) (Counts 1-20); (2) aiding and assisting in the preparation of false individual and joint federal tax returns (IRS Form 1040), in violation of 26 U.S.C. § 7206(2) (Counts 21-42); (3) filing false federal income tax returns in violation of 26 U.S.C. § 7206(1) and 18 U.S.C. § 2 (Counts 43-45); (4) impeding the Internal Revenue Service in violation of 26 U.S.C. § 7212(a) (Count 46); and (5) willfully and knowingly disobeying and resisting the lawful orders issued by a United States District Judge for the Southern District of Florida during proceedings held in *United States v. Louis W. Ratfield and LWR Financial Services Trust*, Case No. 01-cv-8816, by committing acts that he knew to have been enjoined, or by failing to perform acts that he had been ordered to perform, in violation of 18 U.S.C. § 401(3) (Counts 47-56).[1]  A jury returned a verdict convicting Ratfield on all counts of the indictment except for Count 50.[2]

---

[1] On March 15, 2007, the district court granted the Government's motion to dismiss Counts 16, 21, 27, 29 and 36 of the indictment with prejudice.

[2] The jury failed to indicate a verdict for Count 50 on the verdict form, so it was dismissed with prejudice.

We have had oral argument in this case and the parties are intimately familiar with the facts, so we will not extensively review the facts. Ratfield raises three issues on appeal: (1) whether the district court abused its discretion by allowing IRS revenue agent-witnesses to remain in the courtroom during the trial after Ratfield invoked the rule of sequestration; (2) whether the district court abused its discretion by admitting evidence showing that six years before Ratfield's trial commenced, the district court held one of Ratfield's clients in civil contempt for violating an order to provide documents to the IRS; and (3) whether the district court abused its discretion by admitting testimony from IRS agents that Ratfield was a tax protester, that his arguments were frivolous, and that trusts he set up were abusive and a sham. We address these arguments in turn.

## I.

Ratfield argues the district court abused its discretion by allowing two IRS agents to remain in the courtroom after Ratfield invoked the sequestration rule, Fed. R. Evid. 615.

Rule 615 provides, in relevant part, "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." Nevertheless, the rule "does not authorize exclusion of . . . an officer or employee of a party which is not a natural person designated as its

3

representative by its attorney, or [] a person whose presence is shown by a party to be essential to the presentation of the party's cause." A decision regarding who will be excused from the rule of sequestration is within the trial judge's discretion and will be reversed only upon a clear showing of abuse of discretion. *United States v. Alvarado*, 647 F.2d 537, 540 (5th Cir. Unit A June 1981)[3] (finding the trial court did not abuse its discretion in excusing two drug enforcement agent-witnesses from sequestration requirements).

The district court did not abuse its discretion in deciding to allow the two IRS agents to remain in the courtroom during trial. Agent Grimes testified as a fact witness, an expert witness regarding trusts and taxation, and as a summary witness regarding Ratfield's evolving theories of the taxation of common law trusts. Agent Grimes' testimony aided the jury in understanding the significance of Ratfield's statements, the testimony of the other revenue agents, and the testimony of Ratfield's clients. Her testimony also permitted the other revenue agents to testify primarily as fact witness and avoid repetitive testimony regarding tax laws. Agent Grimes summarized Ratfield's evolving theories regarding the taxation of common law trusts, based on the testimony of other witnesses and

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

documents introduced into evidence.[4]  She could not have done so had she not heard the evidence introduced during the course of the trial.

Agent Lottman testified about his calculation of Ratfield's taxable income and also as a summary witness regarding the total tax loss to the Government.[5] There was little, if any, overlap in the testimony of Agents Grimes and Lottman because they focused on different aspects of the case.  Consequently, we find unpersuasive Ratfield's contention they tailored their testimony to bolster each

---

[4] In tax evasion cases, courts permit IRS agents to testify as summary witnesses. *See, e.g.*, *United States v. Stierhoff*, 549 F.3d 19, 28 (1st Cir. 2008) ("We hold, therefore, that in a tax evasion case, a summary witness may be permitted to summarize and analyze the facts of record as long as the witness does not directly address the ultimate question of whether the accused did in fact intend to evade federal income taxes."); *United States v. Gold*, 743 F.2d 800, 817 (11th Cir. 1984) ("[T]his court has expressly approved the use of expert legal testimony in a case where an IRS agent merely stated his opinion as an accountant with regard to the tax consequences of a transaction, and did not attempt to assume the role of the court.") (internal quotation omitted).

[5] Ratfield also argues the district court erred by allowing Agent Lottman to testify as to the ultimate issue in the case, which Ratfield describes as whether he impeded the IRS from determining the correct tax due.  Ratfield complains the admission of Lottman's expert opinions was unduly prejudicial, violating Fed. R. Evid. 403, and Lottman should not have been allowed to tell the jury what verdict to reach.  This claim was not raised in the district court, thus it is subject to plain error review.  *See* Fed. R. Crim. P. 52(b); *United States v. Pielago*, 135 F.3d 703, 708 (11th Cir. 1998).

The jury was instructed that the ultimate issue in Count 46 was whether Ratfield had specifically intended to impede and obstruct the IRS by, *inter alia*, having his clients file tax returns and other documents that he knew to be false and frivolous. The district court instructed the jury that in order to find Ratfield guilty of Count 46, it would have to find beyond a reasonable doubt that Ratfield knowingly endeavored to obstruct or impede the IRS and that he did so corruptly.  A review of the record shows Agent Lottman did not offer any testimony regarding his opinion about what Ratfield intended, so he did not invade the jury's province as fact-finder.

other or the testimony of the eleven other IRS agents, who testified regarding their audits of Ratfield's clients and their individual dealings with Ratfield.

The jury was able to view and assess the credibility of these witnesses. The district court's decision to allow Agent Grimes and Agent Lottman to remain in the courtroom aided the orderly presentation of the case. There were adequate grounds to permit both IRS agents to remain in the courtroom, so we find no abuse of discretion in excusing them from the sequestration rule.

## II.

Ratfield argues the district judge abused his discretion by allowing the jury to hear evidence that he had previously decided the issues against the defendant's position in a prior, related case. According to Ratfield, the introduction of this evidence, which concerned one of the Government's witnesses, was so prejudicial as to make the trial unfair. Additionally, he argues the attempt at a curative instruction was insufficient to cure the prejudice.

District court rulings on the admissibility of evidence are reviewed for a clear abuse of discretion. *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009). In determining whether the district court erred in failing to exclude relevant evidence under Fed. R. Evid. 403, we give deference to the discretion of the district judge, looking "at the evidence in a light most favorable to its

admission, maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir. 1989).

Ratfield fails to show how he was unfairly prejudiced by Frederick Crawford's testimony, which was only relevant to Count 46, impeding the IRS in violation of 26 U.S.C. § 7212(a). During trial, the Government introduced court documents, which had been signed by Judge Hurley six years earlier, that included (1) an order to Crawford, one of the Government's witnesses in Ratfield's case, to produce documents to the IRS, (2) an order to show cause related to the order to produce documents, and (3) an order incarcerating the witness for failure to comply. Ratfield argues Crawford and the Government purposefully mentioned the judge by name numerous times during the testimony to prejudice Ratfield. After Ratfield objected, Judge Hurley instructed the jury that they should not take it as any indication of what he thinks their verdict should be in the case. The judge then instructed the jury as follows:

> Ladies and gentlemen, as you can imagine, there are lots of things that come before The Court. This is the first time I realized that I had any prior involvement dealing with Mr. Crawford and Mr. Crawford's relationship with Mr. Ratfield.

> I want to make sure the jury understands that they cannot in any way take that as indicating that I have any view at all in terms of what the verdict should be as to Mr. Ratfield or whether the Government has proof in terms of Mr. Ratfield's situation.

7

The only thing I was looking at obviously with Mr. Crawford is the statute that requires people to turn over books and records, and if they have the ability to do it and don't do it, the Court has what is called civil contempt power which effectively says to someone, if you don't turn it over, you will be held in jail until you do turn it over. It is a coercion to say to somebody you have the key to the jail cell yourself, you get out by turning over the records if you have them.

I want to be very clear. I want to really emphasize to the jury they should not in any way, number one, consider that I have any view at all on the merits in terms of the charges against Mr. Ratfield. I assure you I do not. Those are matters for you, the jury, to decide. The fact that there is some prior proceeding that was related principally to Mr. Crawford as he indicated to us.

There is no reason to conclude the jury did not follow the district court's instructions and consider Crawford's evidence only with respect to Count 46 and not with regard to the criminal contempt charges.[6] Moreover, the jury indicated on the special verdict form, that the only manner in which Ratfield impeded the IRS was by filing tax returns stating zero income and zero taxes due and owing. Therefore, the district court did not abuse its discretion in admitting the evidence.

IIII.

Ratfield argues he was unfairly prejudiced when numerous IRS agents were permitted to testify that he was a tax protester, that his arguments were frivolous, and the trusts he set up were abusive and a sham. Ratfield also contends the

---

[6] At trial, the evidence was overwhelming that Ratfield violated the preliminary and permanent injunctions.

8

prejudice was compounded when the judge instructed the jury that he was allowing the testimony about Ratfield being a tax protester because the good faith defense is not available to someone making tax protester arguments.

In determining whether the district court erred in failing to exclude relevant evidence under Rule 403, we give deference to the discretion of the district judge, looking at the evidence in a light most favorable to its admission, and will reverse only upon a clear showing of abuse of discretion. *Elkins*, 885 F.2d at 784; *Brannan*, 562 F.3d at 1306.

The district court did not abuse its discretion in allowing the IRS agents' testimony. At trial, the ultimate issue the jury decided with respect to the charges relating to the filing of false tax returns (Counts 1-46) was whether Ratfield acted in good faith. Contrary to Ratfield's claims, none of the Government's witnesses testified Ratfield was actually a tax protester. The record shows that Dr. Olson, one of Ratfield's clients, testified that he asked Ratfield if he wanted to go down the path of what looked like being a tax protester. Agent Grimes testified the arguments Ratfield made to the IRS were "protester type arguments."

Likewise, none of the witnesses opined that Ratfield's arguments were frivolous in the sense that he did not have a good faith belief in them. Instead, they testified they treated his arguments as frivolous, which meant they were not

9

required to provide a point-by-point refutation to his theories on income taxation or his challenges to their authority to conduct audits.

Agent Grimes explained that the IRS defined an "abusive trust" as a trust set up to avoid taxes. The other agents accurately applied the terms "sham" and "abusive" in that manner in their testimony. The IRS agents testified that, based upon their training and experience as revenue agents, they recognized the trusts Ratfield had set up for his clients were abusive because the person who controlled the trust was also the beneficiary. Moreover, the evidence was overwhelming that Ratfield set up the trusts so that he and his clients could reduce or eliminate their income tax payments.

The only issue was whether Ratfield acted in good faith. The district court gave a comprehensive instruction on the good faith defense and specifically instructed the jury:

> Let me tell you, I've said before that in this tax area, the Government must prove that someone acted willfully.
>
> When the issue of good faith has been raised, that requires the Government to prove that the person did not have a good faith subjective belief that they were following the law or that, to show that they misunderstood the law.
>
> Now, I've explained this before. The reason for this in the one area of the law is that Congress recognizes that the tax laws are complex, so if somebody has a good faith belief that they are not violating the

law, even though their position may seem really quite extraordinary, if they hold that in good faith, if they really believe that, that is a complete defense.

Now, I'm allowing this testimony about tax protest in because that good faith defense is not available if what someone is really doing is just acting as a tax protester.

In other words, the theory of the good faith defense is that somebody intends to follow the tax laws, but they just misunderstand them, and they in good faith believe what they are doing is not a violation of the law.

If somebody is really against paying tax at all, and they are just making up language, that good faith doesn't apply.

But I want to be sure that the jury understands these issues are issues for the jury to decide. They are factual issues.

And in allowing the agent to testify about this concept, I am not in any way suggesting that you need to accept these categorizations.

It is for the jury to make those ultimate determinations as to whether the Government has or has not proven that Mr. Ratfield did not have a good faith belief, and again, it will be for the jury to decide whether this tax protester issue is in place in this case or not.

Based on our review of the record, the Government's witnesses did not opine whether Ratfield acted in good faith. The witnesses' testimony concerned Ratfield's conduct, his evolving theories on the IRS's authority to tax and the taxation of trusts and the fact that they advised him his theories lacked any support in the law. This testimony was relevant to the jury's determination whether

11

Ratfield acted in good faith. Ratfield's argument he was unfairly prejudiced by the IRS agents' testimony and the jury instruction on the good faith defense is without merit. We conclude the district court did not abuse its discretion.

**AFFIRMED.**