[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 09, 2010
JOHN LEY
ACTING CLERK

No. 09-10979
Non-Argument Calendar

_____

D. C. Docket No. 08-20058-CR-MGC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SORGA SUAREZ,
a.k.a. Lizette Solis,
a.k.a. Sorgalim Sin Barzaga,
a.k.a. Sorgalim Valladares,
a.k.a. Sorgalim Barzaga,
a.k.a. Lizette Valladares,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 9, 2010)

Before BARKETT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Sorga Suarez appeals her conviction and 48-month sentence for income tax evasion for calendar year 2001, in violation of 26 U.S.C. § 7201. Suarez argues that: (1) the district court plainly erred by giving an inadequate limiting instruction to the jury about the proper use of evidence of uncharged conduct; (2) the district court clearly erred by finding that she evaded in excess of $400,000 in taxes and was therefore subject to base offense level of 20 pursuant to U.S.S.G. §§ 2T1.1(a)(1) and 2T4.1; (3) the district court clearly erred in imposing a two-level sentencing increase under U.S.S.G. § 2T1.1(b)(1) for failing to report or correctly identify the source of income exceeding $10,000 from criminal activity; and (4) the district court clearly erred in imposing a two-level sentencing increase, pursuant to U.S.S.G. § 2T1.1(b)(2), for the use of sophisticated means. After careful review, we affirm.

First, the district court did not plainly err in instructing the jury about the limited purpose for which it could use evidence that also referenced uncharged bad acts by Suarez. Ordinarily, we review evidentiary rulings for an abuse of discretion. United States v. Brannan, 562 F.3d 1300, 1307 (11th Cir. 2009). However, where an objection or argument is raised for the first time on appeal we review only for plain error. United States v. Moriarty, 429 F.3d 1012, 1018-19

(11th Cir. 2005). "To establish plain error, a defendant must show there is (1) error, (2) that is plain, and (3) that affects substantial rights." Id. at 1019. If all three conditions are met, we may exercise our discretion to recognize the error, "but only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (quotation and alteration omitted). As Suarez concedes, she did not object to the limiting instruction given to the jury with regard to its consideration of evidence of her prior conduct, thus we will review her challenge to that limiting instruction now only for plain error.

Under Federal Rule of Evidence 404(b):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b). To be admissible under Rule 404(b), "(1) the evidence must be relevant to an issue other than the defendant's character; (2) there must be sufficient proof so that the factfinder could find that the defendant committed the extrinsic act; and (3) the evidence must possess probative value that is not substantially outweighed by undue prejudice." United States v. Perez, 443 F.3d 772, 779 (11th Cir. 2006). The risk of undue prejudice may be mitigated by a limiting instruction to the jury. United States v. Ramirez, 426 F.3d 1344, 1354

3

(11th Cir. 2005).

Suarez was charged with, and later convicted of evading paying income taxes for 2001 in violation of 26 U.S.C. § 7201 by concealing and attempting to conceal her personal assets and income in her company, Buinsess Etcetera, Inc. ("BEI"), which operated a school that derived virtually all of its income from the Department of Education's ("DOE") financial student aid program. The government, in proving its allegations, called Hector Quintero, a DOE analyst, to testify that he reviewed BEI in August 2001, discovered that most of BEI's students were ineligible to receive the higher education loans or grants given to them, and sent letters to BEI informing them that their participation in the DOE program would not be renewed and that they were being audited. The district court allowed the government to introduce on rebuttal copies of the letters the DOE sent to BEI, despite their indication that Suarez misappropriated federal funds, after it gave the jury the following limiting instruction:

> Ladies and gentlemen, the government, over the next few moments with this witness, is going to introduce several letters. These letters have indications of agency findings concerning issues that the defendant operate [*sic*]. These letters are being introduced to you not for the purpose of determining any wrong doing of this defendant for any other offense other than the offense charged in the indictment. You are not to use these letters to determine any wrong doing other than for the offense charged in the indictment.

Suarez now argues that limiting instruction was improper, because it was

4

hopelessly confusing and allowed the jury to convict her solely on the allegations of wrongdoing contained in the DOE letters in violation of Fed. R. Evid. 404(b).

Suarez has not argued that the district court's limiting instruction was obviously erroneous, nor that it affected the outcome of the judicial proceedings under the plain-error standard. Moriarty, 429 F.3d at 1018-19. That limiting instruction informed the jury that it could only use the letters to determine whether Suarez committed the charged offense, i.e. tax evasion, and not any uncharged wrongdoing. Contrary to Suarez's suggestion, the instruction did not create a situation in which the jury could convict Suarez of tax evasion based solely on allegations that she misappropriated government funds. Further, even if that instruction was erroneous, it is undisputable that Suarez has not demonstrated that her substantial rights were affected, or that the alleged error affected the fairness or integrity of the proceeding.

Second, the district court did not clearly err in calculating Suarez's Sentencing Guidelines range. With respect to guidelines issues, we review "purely legal questions de novo, a district court's factual findings for clear error, and, in most cases, a district court's application of the guidelines to the facts with due deference." United States v. Rodriguez-Lopez, 363 F.3d 1134, 1136-37 (11th Cir. 2004) (quotation omitted).

5

The district court did not clearly err in making the tax loss calculation. Where tax evasion results in a tax loss to the government, a defendant's base offense level is determined under the tax table listed in U.S.S.G. § 2T4.1. U.S.S.G. § 2T1.1(a). For a tax loss of more than $400,000 but not more than $1 million, the base offense level is 20. U.S.S.G. § 2T4.1(H). The guidelines define "tax loss" as "the total amount of loss that was the object of the offense." U.S.S.G. § 2T1.1(c)(1). In determining the amount of tax loss, the Guidelines direct a sentencing court to "make a reasonable estimate based on the available facts." U.S.S.G. § 2T1.1, comment. (n.1).

In the present case, Suarez was given a base offense level of 20, pursuant to § 2T4.1, based on a finding that the government suffered a tax loss of more than $400,000. Although there is some confusion regarding whether Suarez owed $105,019, $105,919, or $106,991 in unpaid taxes for calendar year 1999, a base offense level of 20 is warranted even under the lowest possible tax assessment. *See* U.S.S.G. § 2T4.1(H). When coupled with agents Hammond and Andrews's calculation that Suarez's owed $313,254 in unpaid taxes for 2001, a 1999 tax liability of $105,019 yields a total tax loss of $418,273. Moreover, the district court reasonably estimated the tax loss for 1999 based on the testimony of Agent Hammond, who examined BEI's 1999 tax return and calculated a gross corporate

6

income for BEI.  *See* U.S.S.G. § 2T1.1, comment. (n.1).

Nor did the district court err in applying a source-of-income enhancement to Suarez's guidelines calculation.  Pursuant to U.S.S.G. § 2T1.1(b)(1), a two-level sentencing enhancement is warranted if a "defendant failed to report or to correctly identify the source of income exceeding $10,000 in any year from criminal activity."  U.S.S.G. § 2T1.1(b)(1).  "Criminal activity" denotes "any conduct constituting a criminal offense under federal, state, local, or foreign law."  U.S.S.G. § 2T1.1, comment. (n.3).  The evidence presented at trial, which included both the DOE letters and Agent Quintero's testimony, showed that a DOE program review of BEI found that Suarez had enrolled ineligible students for federal financial aid, falsified documents to suggest student eligibility, failed to submit to required closeout audits for three consecutive years, and had received approximately $7 million in federal funds.  Agent Hammond also testified that in 2001, Suarez transferred over $1 million in federal grant and loan funds, which were supposed to be distributed to qualified students for living expenses, into her personal bank accounts and misclassified the transactions as business expenses or accounts receivable.  Because the evidence presented at trial indicated that Suarez derived more than $10,000 in 2001 from misappropriating government funds and failed to report the source of the income, the district court did not clearly err in imposing a

two-level sentencing increase under § 2T1.1(b)(1).

We also reject Suarez's argument, raised for the first time on appeal, that the source-of-income enhancement violates her Fifth Amendment right against self-incrimination. An error cannot be considered "plain" unless it is "clear under current law," United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000) (quotation omitted), and there is no law in the Supreme Court or this Court resolving this issue. See also United States v. Roush, 466 F.3d 380, 388 (5th Cir. 2006) (rejecting a Fifth Amendment challenge to the sentencing provision because the "point of the enhancement . . . is to further deterrence, particularly in light of the chronic under-reporting of criminally-derived income" and the "two-level increase does not itself force an individual to disclose the income, but merely takes into account the source of income when penalizing non-disclosure").

Finally, the district court did not clearly err in applying a sophisticated means enhancement to Suarez's guidelines calculation. The sentencing guidelines provide for a two-level increase in a defendant's base offense level if the offense involved "sophisticated means." U.S.S.G. § 2T1.1(b)(2). The commentary describes "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense," including "[c]onduct such as hiding assets or transactions, or both, through the use

8

of fictitious entities, corporate shells, or offshore financial accounts." U.S.S.G. § 2T1.1(b), comment. (n.4).

We have affirmed the application of a sophisticated means enhancement where the defendant used multiple bank accounts or other financial instruments to conceal income and cash expenditures. See United States v. Campbell, 491 F.3d 1306, 1315-16 (11th Cir. 2007) (affirming sentence enhancement where the defendant utilized campaign accounts and credit cards registered in other people's names to conceal cash expenditures in an attempt to impede discovery of his tax fraud). Recently, in United States v. Clarke, we upheld the district court's determination that the defendant used sophisticated means to conceal the true extent of his income by depositing his salary into accounts that were not registered in his own name and instructing his employer to make payments out of these accounts directly to his personal creditors and insurance carriers. 562 F.3d 1158, 1166 (11th Cir. 2009). In upholding the district court's finding, this Court held that there was "no material difference between concealing income and transactions through the use of third-party accounts . . . and using a corporate shell or a fictitious entity to hide assets." Id.

Because Suarez utilized multiple bank accounts under multiple names and misclassified corporate documents to obscure the true nature and extent of her

income and expenditures, the district court did not clearly err in imposing a two-level enhancement for using sophisticated means to conceal her tax evasion.

**AFFIRMED.**